UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN BLANC,

       Plaintiff,

- against -

PALISADES COLLECTION, LLP and
PRESSLER and PRESSLER,

       Defendants.

06 Civ 01626 (CLB)(LMS)

**REPORT AND
RECOMMENDATION**

TO:   THE HONORABLE CHARLES L. BRIEANT,
        UNITED STATES DISTRICT JUDGE

      John Blanc ("Plaintiff"), brings this action against Palisades Collection, LLP ("Palisades") and Pressler and Pressler ("Pressler") (collectively "Defendants") claiming that Defendants misrepresented the character of the debt at issue, failed to mark the debt as "disputed," continued collection efforts while the debt was "disputed," and unlawfully obtained Plaintiff's credit report in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law § 380-o.

      On June 4, 2007, Plaintiff moved for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP") on the issue of whether Defendants violated the FDCPA and the NYFCRA only. However, on August 9, 2007, Plaintiff requested that the Court award Plaintiff statutory damages in his reply to Defendants' opposition. For the reasons stated below, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's

1

motion for partial summary judgment should be denied.  Accordingly, I find no reason to address the assessment of statutory damages in this Report & Recommendation.

I. **BACKGROUND**

    A. **Summary of Relevant Facts**[1]

On or about July 7, 2005, Palisades purchased a portfolio of defaulted AT&T telephone accounts.  Plaintiff's 56.1 Statement at ¶ 1; Defendants' 56.1 Counter-Statement at ¶ 1.  One of the accounts, account number PAL1 ATT506 3280652 ("the account" or "the alleged debt"), was listed in Plaintiff's name.  Id.  On July 27, 2005, and on September 16, 2005, Palisades sent initial notice letters to Plaintiff at the address linked to the account.  Plaintiff's 56.1 Statement at ¶¶ 2-3; Defendants' 56.1 Counter-Statement at ¶¶ 2-3A.  Plaintiff alleges that he never received the letters, and Palisades's records reveal that Plaintiff did not respond to the letters.  Plaintiff's 56.1 Statement at ¶ 3; Defendants' 56.1 Counter-Statement at ¶¶ 3-3A.  On November 4, 2005, Palisades sent the account to its attorneys at Pressler and Pressler for collection of the debt.

Plaintiff alleges that in early November he learned from checking his credit reports that Palisades had reported the alleged debt to three major credit bureaus–Equifax, Trans Union, and Experian.  Plaintiff's 56.1 Statement at ¶ 4.  Plaintiff further alleges that on November 4, 2005, Plaintiff sent a certified letter ("November 4, 2005, letter") to Palisades stating that the debt was

---

[1] The facts set forth in this section are taken from: (1) the Amended Complaint; (2) Defendants' Amended Answers; (3) Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment ("Plaintiff's Memorandum in Support") and the accompanying 56.1 Statement ("Plaintiff's 56.1 Statement"); (4) Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Memorandum in Opposition") and the accompanying 56.1 Counter-Statement ("Defendants' 56.1 Counter-Statement"); (5) Plaintiff's Reply Memorandum ("Plaintiff's Reply Memorandum"); and (6) the evidence submitted by the parties in support of their submissions, including deposition testimony.  The facts contained in this section are uncontested, unless otherwise noted, and for the purposes of Plaintiff's motion for partial summary judgment against Defendants, are construed in the light most favorable to Defendants, the nonmoving parties.

disputed and requesting verification of the debt.  Id.  Palisades denies receiving the November 4, 2005, letter and therefore admits that it did not respond to the letter or remove the disputed debt from Plaintiff's credit report.  Defendants' 56.1 Counter-Statement at ¶¶ 4-4B.

On or about November 9, 2005, Pressler sent an initial notice to Plaintiff, which was received by Plaintiff.  Plaintiff's 56.1 Statement at ¶ 10; Defendants' 56.1 Counter-Statement at ¶ 10.  On November 18, 2005, Pressler obtained Plaintiff's credit report from Experian for the purpose of confirming Plaintiff's address and to determine whether Plaintiff had filed for bankruptcy.  Plaintiff's 56.1 Statement at ¶ 17; Defendants' 56.1 Counter-Statement at ¶ 17.  On December 1, 2005, Plaintiff sent a letter disputing the debt to Pressler via certified mail.  Plaintiff's 56.1 Statement at ¶ 18; Defendants' 56.1 Counter-Statement at ¶ 18.  In response, Pressler sent Plaintiff a letter dated December 8, 2005 ("December 8, 2005, letter"), indicating that verification of the alleged debt was enclosed.  Plaintiff's 56.1 Statement at ¶¶ 20-21; Defendants' 56.1 Counter-Statement at ¶¶ 20-21.  Plaintiff received the December 8, 2005, letter, but alleges that no verification was enclosed.  Plaintiff's 56.1 Statement at ¶¶ 20-21.  On December 12, 2005, Plaintiff sent Pressler a letter stating that the information he requested was not included in the December 8, 2005, letter.  Plaintiff's 56.1 Statement at ¶ 22; Defendants' 56.1 Counter-Statement at ¶ 22.  Pressler alleges that because Plaintiff's letter did not indicate that the verification document was not enclosed in the December 8, 2005, letter, it did not respond.  Defendants' 56.1 Statement at ¶¶ 22-24, 28.  Pressler did not tell Palisades that the debt was disputed.  Plaintiff's 56.1 Statement at ¶ 24; Defendants' 56.1 Counter-Statement at ¶¶ 24, 28.

On January 4, 2006, Palisades alleges that it received notice through E-Oscar, a service through which a debt collector receives notice of a dispute directly from a credit bureau, that

3

Plaintiff had disputed the debt.  Defendants' 56.1 Counter-Statement at ¶ 24A; Plaintiff's Exhibit 18 at page 20.  Palisades alleges that it reported the debt as disputed after receiving the E-Oscar notification, that it deleted the account from Plaintiff's credit report on February 24, 2006, and that it sent Plaintiff verification of the debt on February 27, 2006.  Plaintiff's 56.1 Statement at ¶¶ 26-27; Defendants' 56.1 Counter-Statement at ¶¶ 24A, 26-29.  Plaintiff denies receiving verification of the debt and alleges that despite his dispute of the debt, Palisades continued to attempt to collect the debt by sending Plaintiff a collection letter on September 20, 2006.  Plaintiff's 56.1 Statement at ¶¶ 29-31.

In addition to the allegations regarding Plaintiff's dispute of the debt, Plaintiff also alleges that Palisades falsely reported Plaintiff's alleged debt as a "factoring account," an "installment account," an "open account," "past due," and "120 days past due."  Plaintiff's 56.1 Statement at ¶¶ 43-55.  Palisades denies these allegations and alleges that it followed guidelines called the Metro 2 Guidelines when reporting the account to the credit bureaus.  Defendants' 56.1 Counter-Statement at ¶¶ 43-55.

      B.      **<u>Procedural History</u>**

Plaintiff initiated the instant civil action on March 1, 2006.  Docket entry 1.  Palisades and Pressler answered the Complaint on March 24, 2006.  Docket entries 9 and 10.  Your Honor referred the matter to me for all purposes on March 3, 2006.  Docket entry 2.  On May 14, 2007, Plaintiff submitted an Amended Complaint.  Docket entry 22.  Palisades and Pressler submitted amended answers on May 30, 2007.  Docket entries 23 and 24.  On June 4, 2007, Plaintiff made a motion for partial summary judgment.  Docket entries 27.  On July 3, 2007, Palisades and Pressler filed a joint opposition to Plaintiff's motion for partial summary judgment.  Docket entry

4

28. Plaintiff submitted a reply to Defendants' opposition on August 9, 2007. Docket entry 33.

## II.     DISCUSSION

### A.     The Standard for Dismissal Pursuant to Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

Local Civ. R. 56.1(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56. Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the

statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried. Local Civ. R. 56.1(b). Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." Trebor Sportswear Co. v. Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (quoting Anderson, 477 U.S. at 250 n.5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

    **B.**    **Plaintiff's Motion for Summary Judgment**

In the Amended Complaint, Plaintiff asserts three causes of action. Amended Complaint at ¶¶ 51-58. First, Plaintiff alleges that Palisades violated §§ 1692e(2)(A), (8), and (10), 1692f, and 1692g of the FDCPA by providing false credit information and engaging in deceptive practices, falsely characterizing Plaintiff's alleged debt on Plaintiff's credit reports, and

continuing collection activities prior to providing verification of the debt. Id. at ¶¶ 51-53. Second, Plaintiff alleges that Pressler is liable under § 1692e(8) and (10) of the FDCPA for improperly viewing Plaintiff's credit report, failing to report to Palisades that the debt was in dispute, and providing false credit information and engaging in deceptive practices. Id. at ¶¶ 54-56. Finally, Plaintiff alleges that Palisades is liable under NYFCRA for knowingly and willfully introducing false information to Plaintiff's credit reports. Id. at ¶¶ 56-58.

In his motion for partial summary judgment, Plaintiff alleges that he is entitled to judgment as a matter of law as to Defendants' liability under each of his claims. See generally Plainiff's Memorandum in Support. Defendants argue that Plaintiff has not established that there are no genuine issues of material fact as to each of Plaintiff's claims, and therefore Plaintiff is not entitled to summary judgment. See generally Defendants' Memorandum in Opposition.

### 1.  FDCPA Claims Against Palisades and Pressler

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State Action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To establish a prima facie case under the FDCPA, a plaintiff must establish four elements: (1) that the plaintiff is a natural person who is harmed by violations of the FDCPA, (2) the "debt" arises out of a transaction entered primarily for family, personal, or household purposes, (3) the defendant collecting the debt is a "debt collector" under the FDCPA, and (4) the defendant has violated, by act or omission, the provisions of the FDCPA. 29 Margorie Wengert, Causes of Action 2d 1 § 9 (2006). Because the FDCPA is a strict liability statute, the defendant's intent is not relevant in

determining whether the defendant violated the statute. See Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996). Additionally, when determining whether the defendant has violated the statute, the court views the defendant's conduct from the standpoint of the "least sophisticated consumer." Id. at 34.

In his motion for partial summary judgment, Plaintiff addressed only the fourth element of his FDCPA claims. Specifically, as explained above, Plaintiff alleges that Palisades violated the FDCPA by falsely characterizing the debt on various credit reports; that Palisades and Pressler violated the FDCPA by failing to provide verification, mark the debt as disputed, and cease collection efforts when Plaintiff disputed the debt; and that Pressler violated the FDCPA by improperly viewing Plaintiff's credit report. See Plaintiff's Memorandum in Support at Points 4-8.

### *a)  False Characterization of the Debt*

Plaintiff alleges that when Palisades reported Plaintiff's alleged debt as an "open account," a "factoring account," an "installment account," "past due" and "120 past due" it provided false information to the credit bureaus in violation of 15 U.S.C. §§ 1692e(2)(A), (8), and (10), and 1692f. Id. at Points 5 and 7. Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of debt." 15 U.S.C. § 1692e. "The sixteen subsections of section 1692e provide a nonexhaustive list of practices that fall within the statute's ban." Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993). Subsection (2)(A) prohibits the "false representation of . . . the character, amount, or legal status of any debt . . . ."; subsection 8 prohibits "communicating . . . to any person credit information which is known or which should be known to be false . . . ."; and

subsection (10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer." Id. at § 1692e(2)(A), (8), and (10).  Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  Id. at § 1692f.

In support of his motion for summary judgment on his claim that Palisades falsely characterized the debt, Plaintiff argues that Palisades should be barred under the doctrine of issue preclusion from raising new defenses to Plaintiff's allegation that Palisades falsely characterized the debt as a "factoring account."  Plaintiff's Memorandum in Support at Point 7.  Specifically, Plaintiff points out that the issue was raised in the memorandum in support of summary judgment in a similar suit by Plaintiff's wife, Noelle Blanc, and that Your Honor entered judgment in favor of his wife in that case.  Id.  Palisades argues that issue preclusion is not appropriate.  Defendants' Memorandum in Opposition at Point 7.

" 'Issue preclusion attaches only to determinations that were necessary to support the judgment entered in the first action.' "  Shiro v. Farley, 510 U.S. 222, 233 (1994) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4421, p. 192 (1981)).  See also, McKitchen v. Brown, 481 F.3d 89, 105 (2d Cir. 2007).  Although the Complaint in Noelle Blanc's case included a claim that Palisades falsely characterized the debt as a "factoring account" similar to Plaintiff's claim regarding the characterization of his alleged debt, and Noelle Blanc's memorandum in support of summary judgement addressed the claim, the Complaint and memorandum in support also address claims for other FDCPA violations.  See 05 Civ. 975 (CLB), Docket entry 1; Plaintiff's Exhibit 21.  In rendering a decision for Plaintiff's wife, Your Honor did not determine whether Noelle Blanc proved as a matter of law that Palisades had

9

committed each of the violations of which she complained.  See 05 Civ. 975 (CLB), Docket entry 24.  Rather, Your Honor stated that "the collection agency . . . violate[d] [the statute] in numerous ways."  Id. at page 1.  Accordingly, the determination that Palisades misrepresented the character of the alleged debt by reporting it as a "factoring account" was not necessary to support the judgment in Noelle Blanc's case.  Thus, I conclude, and respectfully recommend that Your Honor should conclude, that issue preclusion cannot properly be applied to Plaintiff's claim regarding the characterization of the account as a "factoring account."

Plaintiff also argues that he is entitled to summary judgment as a matter of law for Palisades's allegedly false characterization of the debt because he has established as a matter of law that the characterizations were false.  Plaintiff's Memorandum in Support at Point 5. Palisades argues that it has submitted evidence that the characterizations were not false and that therefore it has raised a genuine issue of material fact as to this claim.  Id.  I conclude, and respectfully recommend that Your Honor should conclude, that the evidence submitted by the parties raises a genuine issue of material fact as to the meaning of the terms used to characterize the alleged debt when reported to the credit bureaus, and therefore raises a genuine issue of material fact as to whether Palisades properly reported the debt to the credit bureaus.  For example, Monica Bey ("Bey"), the Director of Collections for Palisades, explained at her deposition that because the last payment on the account was made on May 22, 2003, it has been "past due" since that date.  Plaintiff's Exhibit 18 at page 40.  Additionally, Bey testified that Palisades reports every account as an "open account" and a "factoring company account."  Id. at pages 28-29.  Bey further testified that Palisades has no choice other than to label an account "open" and indicated that "factoring company account" is used interchangeably with "debt

collector" under the reporting guidelines used by Palisades. Id. at pages 27-28. Finally, Bey denied that Palisades listed the debt as an "installment account," and explained that the word "installment" on Plaintiff's credit report is a heading used by the credit bureau, and that because Palisades reported zero dollars under that heading, the account was not reported as an installment account. Id. at pages 29-30.

Although Plaintiff cited the "Federal Trade Commission commentary" in support of his assertion that "a collection account that has been transferred and sold cannot be late, open, past due, nor have a balance," he did not direct the Court to any such commentary. Plaintiff's Memorandum in Support at Point 5, page 19. However, the Court has reviewed the Federal Trade Commission's Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50, 097, 50,101 (Dec. 13, 1988), and has found no language supporting Plaintiff's assertion. Plaintiff also cites the Britannica Encyclopedia definition of "Factoring Company" in support of his assertion that his alleged debt was not properly reported as a "factoring account."[2] Although the definition offered by Plaintiff does not seem to fit the account at issue in this case, in light of Bey's testimony that the term "factoring account" is used synonymously with the term "debt collector" under the guidelines used by Palisades, I conclude, and respectfully recommend that Your Honor should conclude, that the

---

[2] According to Plaintiff's Memorandum in Support, the Britannica Encyclopedia defines "Factoring Company" as:
> In finance, the selling of accounts receivable on a contract basis to an agency known as a factor in order to obtain cash payment before the accounts come due. The factor assumes full responsibility for credit analysis or new accounts, payments collection, and credit losses. Factoring is most often used in seasonal industries such as textiles and shoes to shift the functions of credit and collection to a specialized agency.

Plaintiff's Memorandum in Support at pages 16-17.

Britannica Encyclopedia definition of "factoring company" does not prove as a matter of law that Plaintiff's account was falsely characterized. Accordingly, in light of Bey's testimony as to the meaning of the terms "factoring account," "installment account," "open," and "past due," and Plaintiff's lack of evidence establishing the falsity of the terms as applied to the alleged debt, I conclude, and respectfully recommend that Your Honor should conclude that Plaintiff has failed to establish that he is entitled to judgment as a matter of law with regard to his claim that Palisades falsely characterized the debt to the credit bureaus.

### b) *Failure to Provide Verification, Mark Debt as Disputed, and Cease Collection Efforts*

Plaintiff alleges that Defendants violated §§ 1692g(b), 1692e(2)(A) and (8), and 1692f of the FDCPA when they failed to provide verification, mark the debt as disputed with the credit bureaus, and cease collection efforts after they received notification from Plaintiff that the debt was disputed. Plaintiff's Memorandum in Support at Points 4 and 6. Sections 1692e (2)(A), (8), and 1692f are explained supra. Section 1692g(b) requires that

> [i]f the consumer notifies the debt collector in writing within [thirty days after receipt of the initial notice from the debt collector] that the debt . . . is disputed . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Under § 1692g(b), debt collection efforts must cease for at least the period from the date that the debt collector receives the request for verification until it provides the verification. See Rabideau v. Mgmt. Adjustment Bureau, 805 F. Supp. 1086, 1094 (W.D.N.Y. 1992). "At the minimum, 'verification of a debt involves nothing more than the debt

12

collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.' " Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1173-74 (9th Cir. 2006) (quoting Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999)).  "[V]erification is only intended to 'eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' " Chaudhry, 174 F.3d at 406 (quoting S.Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699).

     Plaintiff bases his claim against Palisades on two separate time periods.  First, Plaintiff alleges that he sent a letter to Palisades disputing the debt on November 4, 2005.  Plaintiff's Memorandum in Support at Point 4; Plaintiff's 56.1 Statement at ¶¶ 4-6.  Plaintiff alleges that he never received verification of the debt and that Palisades did not report the debt as disputed until February 24, 2006.  In support of his allegations, Plaintiff submitted his November 4, 2005, letter and a "Track & Confirm" printout from the U.S. Postal Service Website indicating that the November 4, 2005, letter was delivered to the Palisades's address in Englewood Cliffs, New Jersey.  Plaintiff's Exhibit 4.  Palisades denies that it received the letter, and submits Bey's testimony which states that Palisades's record of Plaintiff's account does not reveal that Palisades received the letter.  Plaintiff's Exhibit 18 at page 30; Defendant's 56.1 Counter-Statement at ¶ 4.  Such a dispute creates a genuine issue of material fact because a reasonable jury could not find for Plaintiff without finding that Palisades had, in fact, received the November 4, 2005, letter.  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's motion for summary judgment with regard to his claim that Palisades failed to properly respond to his notice of dispute cannot be granted based on the November 4, 2005, letter.

Next, Plaintiff alleges that after Palisades received the E-Oscar notification that he disputed the debt on January 4, 2006, Palisades failed to provide him with verification of the debt and continued collection activities by sending the September 20, 2006, letter. In support of his allegations, Plaintiff submitted the September 20, 2006, letter.[3] Plaintiff's Exhibit 14. Palisades alleges that it sent Plaintiff a February 27, 2006, letter that provided sufficient verification of the debt, and offers the testimony of Bey and Stephen McCabe ("McCabe"), an attorney for Pressler and Pressler, in support of its allegations. Plaintiff's Exhibit 18 at page 41; Plaintiff's Exhibit 19 at page 17. The deposition testimony of Bey and McCabe raises a genuine issue of material fact as to whether Palisades sent Plaintiff a verification of the debt after receiving the January 4, 2006, notice of dispute from E-Oscar. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's motion for summary judgment cannot be granted as to his claim that Palisades failed to properly respond to the E-Oscar notice of dispute.

Plaintiff bases his claim against Pressler on his allegations that he sent a letter to Pressler disputing the debt on December 1, 2005, and that Pressler failed to properly respond by sending Plaintiff a verification of the debt and reporting to Palisades that Plaintiff had disputed the debt. Plaintiff's Memorandum in Support at Point 4. In support of his motion, Plaintiff submitted his December 1, 2005, letter, the December 8, 2005, letter he alleges he received from Pressler without the enclosed verification, and his December 12, 2005, letter to Pressler, which informs Pressler that "none of the requested information [was] enclosed [in the December 8, 2005,

---

[3] In his Memorandum in Support, Plaintiff stated that the letter was dated September 6, 2006. Plaintiff's Memorandum in Support at page 15. However, the letter submitted by Plaintiff is dated September 20, 2006. Plaintiff's Exhibit 14.

letter]." Plaintiff's Exhibits 7, 8, and 9.

Pressler disputes Plaintiff's version of the facts, asserting that Plaintiff was sent a verification twice–once from Pressler with the December 8, 2005, letter, and again from Palisades in February 2006, as testified to by McCabe. Specifically, McCabe testified that Pressler's record of Plaintiff's account indicated that the verification was sent with the December 8, 2005, letter (Plaintiff's Exhibit 19 at pages 11 and 14) and that the verification was sent again on February 28, 2006. Id. at page 17. Such evidence raises a genuine issue of material fact as to whether Pressler sent the verification on December 8, 2005, and therefore raises an issue of material fact as to whether Pressler's subsequent activities concerning the account–i.e. its failure to report the debt as disputed and its failure to inform Palisades that Plaintiff disputed the account–violated the FDCPA. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has not established that he is entitled to summary judgment as a matter of law with regard to his claim that Defendants failed to provide verification of the debt, mark the debt as disputed, and cease collection activities after Plaintiff notified them that he disputed the account.

### c)     *Improper Viewing of Credit Report*

Plaintiff claims that Pressler violated 15 U.S.C. § 1692e(8) and (10) when it obtained Plaintiff's credit report on November 18, 2005. Plaintiff's Memorandum in Support at Point 8. Specifically, although Plaintiff did not bring a claim under the Fair Credit Reporting Act ("FCRA"), Plaintiff claims that Pressler did not have a legitimate business purpose, as defined by FCRA, 15 U.S.C. § 1681b(a)(3)(F), for obtaining the report and therefore violated the FDCPA. Id. Defendant argues that the referral of Plaintiff's debt for collection gave Pressler a permissible

purpose for obtaining his credit report pursuant to 15 U.S.C. § 1681b.  Id.

FCRA prohibits "using a credit report for an impermissible purpose" and "obtaining consumer information under false pretenses . . . ."  15 U.S.C. §§ 1681b, 1681q.  However, "where a permissible purpose for obtaining a credit report is demonstrated, then, as a matter of law, the information cannot have been obtained under false pretenses."  Stonehart v. Rosenthal, No. 01 Civ. 651 (SAS), 2001 WL 910771, *5 (S.D.N.Y. 2001).  Similarly, where a defendant has a permissible purpose for obtaining a credit report under the FCRA, it could not have used false or misleading means to obtain the report in violation of the FDCPA.  Id.

In this case, it is undisputed that Pressler obtained a copy of Plaintiff's credit report on November 18, 2005, just a few weeks after Pressler alleges that it was referred the alleged debt for collection on November 4, 2005.  Plaintiff's 56.1 Statement at ¶ 17; Defendants' 56.1 Counter-Statement at ¶¶ 3B, 17.  It is also undisputed that Pressler obtained the report for the purpose of obtaining Plaintiff's address and determining whether or not Plaintiff had filed for bankruptcy.  Plaintiff's 56.1 Statement at ¶ 17; Defendants' 56.1 Counter-Statement at ¶ 17. Such a purpose is a permissible purpose under the FCRA.  See Stonehart, 2001 WL 910771, at *4 (holding that the defendants had a proper purpose for obtaining the plaintiff's credit report when they obtained the report to verify the plaintiff's address after being referred the debt for collection).  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has failed to establish that Pressler violated § 1692e(8) and (10) when it obtained the credit report.  Thus, I conclude and respectfully recommend that Your Honor should conclude, that Plaintiff's motion for partial summary judgment as to his claim that Pressler unlawfully obtained his credit report should be denied.

    **2.**      **NYFCRA Claim Against Palisades**

Plaintiff's claim against Palisades under the NYFCRA is based on the same allegations as Plaintiff's claim against Palisades for the allegedly false characterization of the debt as a "factoring account," an "open account," an "installment account," "past due," and "120 days past due."  Plaintiff's Memorandum in Support at Point 9.  Accordingly, for the reasons stated <u>supra</u>, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has failed to establish no genuine issue of material fact as to Palisades's liability for allegedly falsely characterizing the debt under the NYFCRA.

### III.    CONCLUSION

For the above stated reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's motion for partial summary judgment should be denied.

## IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Charles L. Brieant at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Brieant.

Dated: Oct 5, 2007
White Plains, New York

Respectfully Submitted,

Lisa Margaret Smith
Chief United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Charles L. Brieant, U.S.D.J.